

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STERLING NATIONAL BANK, | ) |
|                        Plaintiff, | ) Case No.: 1:20-cv-06302 |
| v. | ) |
| ATLAS SN LEASING INC., SRETKO KRSIC, SLADANA KRSIC & NENAD IGNJATOVIC, | ) |
|                        Defendants. | ) |

**DECLARATION OF DEBRA LOPEZ
IN SUPPORT OF DAMAGES**

I, Debra Lopez, declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am over the age of eighteen.

2. I have both personal knowledge and knowledge based on documents regarding the matters set forth herein, and if called to testify, I would testify as set forth herein.

3. I am a Manager for Account Collections in the Collections & Asset Recovery Department for Plaintiff Sterling National Bank ("Sterling").

4. Sterling is a national bank organized under the laws of the United States, with its main office located in Montebello, New York.

5. By virtue of my employment with Sterling, I am familiar with the administration, supervision and collection aspects of certain accounts, including the account that is the subject of this litigation.

1

6. I am familiar with Sterling's business custom and practices relating to the retention and maintenance of its records. I have custody and control of the business records of Sterling and am familiar with the manner in which those records are compiled. Furthermore, the documents that I refer to below are kept in my custody and control.

7. With respect to Sterling's electronic records, Sterling has developed a procedure for entering data into its computers with built-in safeguards to ensure accuracy and identify errors. The computers that Sterling's personnel use to enter data are reliable and kept in a good state of repair.

8. With respect to any electronic records discussed in this Declaration, I obtained a computer readout with the data, used the proper procedures to obtain the readout, and the computer from which I obtained the readout was in working order at the time I obtained the readout. I recognize all the exhibits that are electronic records, because I am familiar with Sterling's computer programs in which such information is entered and stored.

9. Sterling's records are made in the ordinary course of Sterling's business by persons who have a business duty to make such records. The records are made at or near the time of the occurrence of the event of which they are a record, or from information transmitted by a person with knowledge of that record. When Sterling generates a document or receives a document (i.e., correspondence, or an electronic or hard copy of a document), Sterling always places a copy of that document in the file to which it relates at the time it receives the document. Every time Sterling receives a payment, the payment is recorded in Sterling's records via a computer software program, which is operated on a computer system.

10. In preparation of this Declaration, I have reviewed Sterling's documents, records, and files, including credit files, relating to Defendants ATLAS SN LEASING INC. ("Atlas"),

SRETKO KRSIC ("Sretko Krsic"), SLADANA KRSIC ("Sladana Krsic") and NENAD IGNJATOVIC ("Ignjatovic") (collectively, the "Defendants").

## BACKGROUND

**A. The Master Agreement and Guaranties**

11. On February 9, 2017, nonparty Woodforest National Bank ("Woodforest"), as lender, and Atlas, as borrower, entered into a Master Equipment Finance Agreement (the "Master Agreement"), which contemplated the parties entering into a series of Schedules for the financing of equipment. A true and correct copy of the Master Agreement is attached hereto as Exhibit 1.

12. On February 9, 2017, to induce Woodforest to enter into the Master Agreement and any subsequent Schedules with Atlas, Sretko Krsic entered into a Guaranty (the "Sretko Krsic Guaranty"), personally guaranteeing all of Atlas's obligations under the Master Agreement and any subsequent Schedules. A true and correct copy of the Sretko Krsic Guaranty is attached hereto as Exhibit 2.

13. On February 9, 2017, to induce Woodforest to enter into the Master Agreement and any subsequent Schedules with Atlas, Sladana Krsic entered into a Guaranty (the "Sladana Krsic Guaranty"), personally guaranteeing all of Atlas's obligations under the Master Agreement and any subsequent Schedules. A true and correct copy of the Sladana Krsic Guaranty is attached hereto as Exhibit 3.

14. On February 9, 2017, to induce Woodforest to enter into the Master Agreement and any subsequent Schedules with Atlas, Ignjatovic entered into a Guaranty (the "Ignjatovic Guaranty"), personally guaranteeing all of Atlas's obligations under the Master Agreement and any subsequent Schedules. A true and correct copy of the Ignjatovic Guaranty is attached hereto as Exhibit 4.

### B. The First Schedule

15. On or about February 10, 2017, Woodforest, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-20 (the "First Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "First Schedule Equipment"). A true and correct copy of the First Schedule is attached hereto as <u>Exhibit 5</u>.

16. Woodforest's first priority security interest in the First Schedule Equipment is reflected in the Certificates of Title, as Woodforest is listed as the first lienholder on the Certificates of Title for the First Schedule Equipment. True and correct copies of the Certificates of Title for the First Schedule Equipment are attached hereto as <u>Exhibit 6</u>.

17. Pursuant to the First Schedule, Atlas agreed to make eighty-four (84) consecutive monthly payments of $21,150.69.

### C. The Second Schedule

18. On or about March 22, 2017, Woodforest, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-21 (the "Second Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "Second Schedule Equipment"). A true and correct copy of the Second Schedule is attached hereto as <u>Exhibit 7</u>.

19. Woodforest's first priority security interest in the Second Schedule Equipment is reflected in the Certificates of Title, as Woodforest is listed as the first lienholder on the Certificates of Title for the Second Schedule Equipment. True and correct copies of the Certificates of Title for the Second Schedule Equipment are attached hereto as <u>Exhibit 8</u>.

20. Pursuant to the Second Schedule, Atlas agreed to make forty-eight (48) consecutive monthly payments of $3,489.02.

### D. The Third Schedule

21. On or about March 22, 2017, Woodforest, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-22 (the "Third Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "Third Schedule Equipment"). A true and correct copy of the Third Schedule is attached hereto as Exhibit 9.

22. Woodforest's first priority security interest in the Third Schedule Equipment is reflected in the Certificates of Title, as Woodforest is listed as the first lienholder on the Certificates of Title for the Third Schedule Equipment. True and correct copies of the Certificates of Title for the Third Schedule Equipment are attached hereto as Exhibit 10.

23. Pursuant to the Third Schedule, Atlas agreed to make sixty (60) consecutive monthly payments of $9,582.85.

### E. The Fourth Schedule

24. On or about April 27, 2017, Woodforest, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-23 (the "Fourth Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "Fourth Schedule Equipment"). A true and correct copy of the Fourth Schedule is attached hereto as Exhibit 11.

25. Woodforest's first priority security interest in the Fourth Schedule Equipment is reflected in the Certificates of Title, as Woodforest is listed as the first lienholder on the

Certificates of Title for the Fourth Schedule Equipment. True and correct copies of the Certificates of Title for the Fourth Schedule Equipment are attached hereto as <u>Exhibit 12</u>.

26. Pursuant to the Fourth Schedule, Atlas agreed to make forty-eight (48) consecutive monthly payments of $4,481.74.

**F. The Fifth Schedule**

27. On or about June 14, 2017, Woodforest, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-24 (the "Fifth Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "Fifth Schedule Equipment"). A true and correct copy of the Fifth Schedule is attached hereto as <u>Exhibit 13</u>.

28. Woodforest's first priority security interest in the Fifth Schedule Equipment is reflected in the Certificates of Title, as Woodforest is listed as the first lienholder on the Certificates of Title for the Fifth Schedule Equipment. True and correct copies of the Certificates of Title for the Fifth Schedule Equipment are attached hereto as <u>Exhibit 14</u>.

29. Pursuant to the Fifth Schedule, Atlas agreed to make sixty (60) consecutive monthly payments of $4,594.02.

**G. The Sixth Schedule**

30. On or about November 21, 2017, Woodforest, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-25 (the "Sixth Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "Sixth Schedule Equipment"). A true and correct copy of the Sixth Schedule is attached hereto as <u>Exhibit 15</u>.

31. Woodforest's first priority security interest in the Sixth Schedule Equipment is reflected in the Certificates of Title, as Woodforest is listed as the first lienholder on the Certificates of Title for the Sixth Schedule Equipment. True and correct copies of the Certificates of Title for the Sixth Schedule Equipment are attached hereto as Exhibit 16.

32. Pursuant to the Fifth Schedule, Atlas agreed to make eighty-four (84) consecutive monthly payments of $21,082.42.

**H. The Seventh Schedule**

33. On or about April 30, 2019, Sterling, as lender, and Atlas, as borrower, entered into Equipment Finance Schedule No. XXXX-026-26 (the "Seventh Schedule") pursuant to the Master Agreement, for the financing of equipment more specifically set forth therein (the "Seventh Schedule Equipment"). A true and correct copy of the Seventh Schedule is attached hereto as Exhibit 17.

34. Sterling's first priority security interest in the Seventh Schedule Equipment is reflected in the Certificates of Title, as Sterling is listed as the first lienholder on the Certificates of Title for the Seventh Schedule Equipment. True and correct copies of the Certificates of Title for the Seventh Schedule Equipment are attached hereto as Exhibit 18.

35. Pursuant to the Seventh Schedule, Atlas agreed to make eighty-four (84) consecutive monthly payments of $11,676.03.

**I. Assignment to Sterling**

36. On or about January 22, 2019, Woodforest, as Seller, and Sterling, as Purchaser, entered into a Purchase and Assumption Agreement, under which Woodforest sold Sterling certain assets of Woodforest, including Woodforest's loans with customers. A true and correct copy of the Purchase and Assumption Agreement is attached hereto as Exhibit 19.

37. Pursuant to the Purchase and Assumption Agreement, Woodforest sold to Sterling all of its right, title and interest in the Master Agreement, First Schedule, Second Schedule, Third Schedule, Fourth Schedule, Fifth Schedule, and Sixth Schedule (together with the Seventh Schedule, collectively, the "Schedules"), as well as the First Schedule Equipment, Second Schedule Equipment, Third Schedule Equipment, Fourth Schedule Equipment, Fifth Schedule Equipment, and Sixth Schedule Equipment (together with the Seventh Schedule Equipment, collectively, the "Equipment"). A true and correct redacted copy of Schedule 2.1(a)(i) to the Purchase and Assumption Agreement is attached hereto as Exhibit 20.

### J. Defendants' Breaches of Contract & Sterling's Damages

38. Atlas defaulted under the Master Agreement, First Schedule, Third Schedule, Sixth Schedule and Seventh Schedule by failing to make the payments due in October 2019, and all payments due thereafter.

39. Failure to make timely payments is an Event of Default under Paragraph 7.1 of the Master Agreement. See Exhibit 1, ¶ 7.1.

40. At the time of default, though Atlas was current on its payments to Sterling under the Second Schedule, Fourth Schedule, and Fifth Schedule, its default under the First Schedule, Third Schedule, Sixth Schedule and Seventh Schedule is a default under all of the Schedules pursuant to Paragraph 7.1 of the Master Agreement.

41. Due to Atlas' default under the Master Lease and Schedules, Sterling is entitled to: (a) the outstanding principal balance due under each Schedule; (b) all accrued and unpaid interest; (c) any prepayment premium set forth in each Schedule; and (d) all costs and expenses incurred by Sterling regarding the Equipment or Sterling's enforcement of its rights under the Master Lease and Schedules. See Exhibit 1, ¶ 8 and Exhibit A to Master Lease, Definition of "Default Amount."

8

42. Subsequent to its default, Atlas paid Sterling off for the balances owed under the Second Schedule and the Fourth Schedule, such that those contracts have been satisfied and paid in full.

43. Atlas subsequently made some good faith payments to Sterling for the balances owed under the First Schedule, Third Schedule, Fifth Schedule, Sixth Schedule and Seventh Schedule, which were applied to the oldest outstanding payments under each Schedule. However, a remaining balance of $3,242,151.34, as set forth below in Paragraph 49, remains due to Sterling.

44. Due to Atlas's default and pursuant to the Master Agreement, Sterling is entitled to prejudgment interest (at the interest rate payable on any Schedule) and late fees (in the amount of 5% of the amount of the payment which is late) for the amounts owed under the Master Agreement and Schedules. See Exhibit 1, ¶ 2.1.

45. Due to Atlas's default and pursuant to the Master Agreement, Sterling is entitled to its attorneys' fees and costs. See Exhibit 1, ¶ 9.6.

46. Sterling demanded payment from Atlas under the Master Agreement and Schedules, but Atlas refused to pay the same.

47. Sterling demanded payment from Sretko Krsic under the Sretko Krsic Guaranty, Sladana Krsic under the Sladana Krsic Guaranty, and Ignjatovic under the Ignjatovic Guaranty (collectively, the "Guaranties"), but Sretko Krsic, Sladana Krsic and Ignjatovic failed to pay the same.

48. Sterling fully performed its obligations under the Master Agreement, Schedules and Guaranties.

49. The remaining balances owed under the First Schedule, Third Schedule, Fifth Schedule, Sixth Schedule and Seventh Schedules are as follows, plus prejudgment interest and attorneys' fees and costs:

| First Schedule – 050-9720026-020 | |
|---|---|
| Balance Owed under First Schedule | $ 859,650.97 |
| Accrued and Unpaid Interest for September | $ 2,397.74 |
| Late Fees | $ 24,874.87 |
| Miscellaneous Fees | $ 105.00 |
| Ending Payment Deposit | $(17,150.00) |
| **Subtotal** | $ 869,878.58 |
| **Default Interest of 5%** -- calculated from date of default of 4/15/2020 to 9/17/2021 = $119.16 per diem x 520 days (Date of Default determined after application of good faith payments referenced in Paragraph 43). | $61,963.20 |
| **TOTAL for First Schedule – 050-9720026-020** | $931,841.78 |

| Third Schedule – 050-9720026-022 | |
|---|---|
| Balance Owed under Third Schedule | $ 239,396.90 |
| Accrued and Unpaid Interest for September | $ 291.64 |
| Prepayment Penalty 2% | $ 10,359.95 |
| Late Fees | $ 12,433.75 |
| Miscellaneous Fees | $ 105.00 |
| **Subtotal** | $ 262,587.24 |
| **Default Interest of 4.78% -- calculated** | $17,882.80 |

10

| | |
|---|---|
| from date of default of 4/15/2020 to 9/17/2021 = $34.39 per diem x 520 days<br><br>(Date of Default determined after application of good faith payments referenced in Paragraph 43). | |
| TOTAL for Third Schedule – 050-9720026-022 | $280,470.04 |

| Fifth Schedule – 050-9720026-024 | |
|---|---|
| Balance Owed under Fifth Schedule | $ 62,413.17 |
| Accrued and Unpaid Interest for September | $ 158.48 |
| Prepayment Penalty 1% | $ 624.13 |
| Late Fees | $ 2,526.70 |
| **Subtotal** | $ 65,722.48 |
| Default Interest of 4.78% -- calculated from date of default of 3/15/2021 to 9/17/2021 = $8.61 per diem x 186 days<br><br>(Date of Default determined after application of good faith payments referenced in Paragraph 43). | $1,601.46 |
| TOTAL for Fifth Schedule – 050-9720026-024 | $67,323.94 |

11

| Sixth Schedule – 050-9720026-025 | |
|---|---|
| Balance Owed under Sixth Schedule | $1,038,411.79 |
| Accrued and Unpaid Interest for September | $ 3,221.38 |
| Prepayment Penalty 2% | $ 20,768.24 |
| Late Fees | $ 25,300.63 |
| Miscellaneous Fees | $ 105.00 |
| **Subtotal** | **$1,087,807.04** |
| **Default Interest of 5.0037% -- calculated from date of default of 4/15/2020 to 9/17/2021 = $149.12 per diem x 520 days**<br><br>(Date of Default determined after application of good faith payments referenced in Paragraph 43). | $77,545.40 |
| **TOTAL for Sixth Schedule – 050-9720026-025** | **$1,165,352.44** |

| Seventh Schedule – 050-9720026-026 | |
|---|---|
| Balance Owed under Seventh Schedule | $ 714,885.15 |
| Accrued and Unpaid Interest for September | $ 2,382.64 |
| Prepayment Penalty 2% | $ 14,297.70 |
| Late Fees | $ 14,012.95 |
| Miscellaneous Fees | $ 105.00 |
| **Subtotal** | **$ 745,683.44** |
| **Default Interest of 4.99% -- calculated from date of default of 4/30/2020 to 9/17/2021 = $101.94 per diem x 505 days**<br><br>(Date of Default determined after | $ 51,479.70 |

| | |
|---|---|
| application of good faith payments referenced in Paragraph 43). | |
| TOTAL for Seventh Schedule – 050-9720026-026 | $797,163.14 |

**TOTAL under all Schedules, including Default Interest (but excluding attorney's fees and costs):**        **$3,242,151.34**

### K. Basis for Order for Replevin

50. Pursuant to the Master Agreement, Schedules and Certificates of Title for the Equipment, Sterling has a first-priority security interest in the Equipment.

51. Because Atlas paid Sterling off for the balances owed under the Second Schedule and the Fourth Schedule, Sterling released its first-priority security interest in the Second Schedule Equipment and the Fourth Schedule Equipment.

52. Sterling continues to have a first-priority security interest in the First Schedule Equipment, Third Schedule Equipment, Fifth Schedule Equipment, Sixth Schedule Equipment and Seventh Schedule Equipment ("Remaining Equipment").

53. Due to Atlas's default under the Master Agreement and Schedules, Sterling is entitled to return of the Remaining Equipment.

54. Atlas refuses to surrender the Remaining Equipment voluntarily.

55. Atlas is wrongfully and unlawfully detaining the Remaining Equipment.

56. Sterling has demanded the return of the Remaining Equipment from Atlas, but Atlas has failed or refused to return the Remaining Equipment.

57. The Remaining Equipment has not been taken for any tax, assessment, or fine levied by virtue of any law of the State of Illinois against the property of Sterling, nor seized under

any lawful process against the goods and chattels of Sterling subject to such lawful process, nor held by virtue of any order for replevin against Sterling.

58. Sterling estimates that the fair market value of the Remaining Equipment is approximately $2,331,300.00, depending on condition.

L. **Basis for Order of Detinue**

59. Atlas is wrongfully retaining possession and control of the Remaining Equipment.

60. Atlas has no right, title, or interest in the Remaining Equipment.

61. Sterling's right to possession of the Remaining Equipment is superior to that of Atlas.

62. All exhibits attached to the Verified Complaint are true, correct, and genuine copies of originals.

63. If called to testify in this matter, I would testify to the above.

FURTHER DECLARANT SAYETH NAUGHT.

By: _____/s/ Debra Lopez_____
Debra Lopez

Manager for Account Collections in the Collections
& Asset Recovery Department
Sterling National Bank

Date: ___9/15/2021___